OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Kenneth N. Jaryga, appeals from his convictions on one count of gross sexual imposition and one count of abduction.
The following facts are relevant to this appeal. On May 28, 1999, appellant was indicted by the Lake County Grand Jury on the following charges: (1) one count of gross sexual imposition, in violation of R.C.2907.05; (2) one count of abduction, in violation of R.C. 2905.02; and (3) one count of receiving stolen property, in violation of R.C. 2913.51. Appellant entered a plea of not guilty to the charges, and retained an attorney to represent him.
On August 13, 1999, appellant filed with the trial court a motion to suppress certain evidence. As grounds for the motion, appellant argued that his arrest for disorderly conduct, a minor misdemeanor, violated R.C. 2935.26. The trial court conducted a hearing, and in a judgment entry dated September 9, 1999, overruled the motion.
The case against appellant proceeded to a jury trial on October 4, 1999, at which time the trial court dismissed the receiving stolen property charge upon motion of the state. Over the next two days, the prosecution called several witnesses to the stand, including the victim, Jenny Forsythe ("Forsythe").
Forsythe testified that during the afternoon of March 20, 1999, she and her nine-year-old daughter went to the Big Lots department store in Mentor, Ohio, to purchase perfume and to look at a couch for her home. After Forsythe looked at the couch in the furniture department, she and her daughter paid for the perfume and left the store.
While leaving the store through the main entrance, Forsythe testified that she noticed a man, whom she later identified as appellant, standing near the doors. As she was walking to her car, appellant, according to Forsythe, began following her. Upon reaching the car, Forsythe took out her keys to unlock her door. As she was doing this, appellant approached from behind and pushed his body against hers, trapping her between his body and the car. Appellant then grabbed Forsythe's right buttock and told her that her "ass looked good and firm."
Forsythe screamed and told appellant to get away from her. Apparently responding to the scream, two unidentified men approached the scene and asked if everything was okay. At that point, appellant walked away from Forsythe's vehicle.
According to Forsythe, appellant entered a maroon truck and began to leave the parking lot. She then got into her own vehicle and followed appellant as he left the shopping center. During this time, Forsythe was able to write down the license plate number of the truck appellant was driving. She then immediately pulled into a nearby BP service station located at the intersection of State Routes 2 and 615 where she called the police.
Shortly thereafter, Officer Timothy Baker ("Officer Baker") of the Mentor Police Department arrived at the service station and asked appellant to give a written statement concerning what had occurred. In addition to the statement, Forsythe also provided Officer Baker with a description of both appellant and the truck he was driving.
Officer Baker also testified on behalf of the state. He related to the jury that when he responded to the BP, he observed Forsythe standing in front of the station crying and visibly shaking. The officer testified that he spoke with Forsythe for approximately ten to fifteen minutes, during which time he obtained the above information.
After speaking with Forsythe, Officer Baker then proceeded to Big Lots where he questioned several of the employees. Later in the afternoon, Officer Baker learned that the truck appellant was driving was registered in the name of Rodney Dennison ("Dennison"). Dennison confirmed that he owned the truck in question, but that appellant, who was employed by Dennison's company, had the truck in his possession. He then gave Officer Baker a physical description of appellant, which matched the one provided by Forsythe.
Around 8:00 p.m., Officer Baker received a report concerning an intoxicated male at Big Lots. As a result, he and another officer responded to the scene. Once there, Officer Baker saw the maroon truck appellant had been driving earlier in the day. He then observed appellant leaning against the front of the Big Lots building. When the officers approached appellant and engaged him in conversation, Officer Baker noticed that appellant's clothing was disheveled, that he was having trouble lighting a cigarette, that his speech was slurred, and that appellant smelled of alcohol.
From his observations, Officer Baker determined that appellant was intoxicated. Based on this determination, he then placed appellant under arrest for disorderly conduct. Appellant was read his rights and placed in the back of a patrol car. The other officer who had accompanied Officer Baker then conducted a search of appellant's truck where several items of ladies' underwear were found in plain view and ultimately seized.
Officer Baker subsequently transported appellant to the police station for questioning. During the interview, appellant admitted to being at Big Lots several times that day. Moreover, appellant also told the officer that he had spoken to a lady in the parking lot, and that he may have told she looked nice. However, he denied ever grabbing the person.
Appellant testified on his own behalf at trial. He explained that on the day in question, he had run some errands in the morning and then drove to the office where he worked as an estimator for an insurance restoration contractor. At the office, appellant began drinking from a bottle of gin and 7-Up, which he had brought with him from home. During the course of the afternoon, appellant consumed enough of the alcohol to obtain what he described as a "happy buzz."
Appellant left the office in his company truck and drove to the BP service station where he purchased gasoline and a hotdog. After leaving there, appellant then proceeded to Big Lots and bought a cooler, barbecue utensils, and smoking chips for his grill.
Appellant testified that he paid for the merchandise and took it out to his truck. However, he decided to return to the store to look at a roll-top desk he and his wife were considering buying. Appellant stated that he walked around the store for approximately fifteen minutes before deciding to look elsewhere.
While walking to his car, appellant claimed that he came upon a woman getting into her vehicle. Because there was another automobile parked beside the car, appellant testified that he asked her if he could get by. According to appellant, the woman never responded to his question so he asked once again. In response, appellant told the jury that the woman allegedly made a sarcastic remark.
Determining that the woman was not going to cooperate, appellant decided to squeeze between the other vehicle and the car door. While he was in the process of doing so, appellant testified that the woman told him, "You can't touch my ass." When appellant told her that he never touched her, the woman repeated her comment. It was at this time that the two unidentified men approached and asked if everything was okay.
Appellant subsequently left the shopping center parking lot and proceeded to a furniture store in Painesville and several other stores located near the Great Lakes Mall. After dropping some things off at the office, appellant claimed that he returned to the BP around 8:00 p.m. and purchased a pack of cigarettes. From there, appellant continued to Big Lots to look at the roll-top desk one more time. Appellant went to the furniture department, looked at the desk, and left the store. When he arrived at his truck, appellant testified that he decided to finally purchase the desk. Before entering the store, however, appellant stated that he wanted a cigarette. It was at this time that the two police officers approached him, and he was arrested.
At the conclusion of the testimony, the jury returned verdicts of guilty on both charges. Following the preparation of a presentence investigation report, the trial court conducted a sentencing hearing on November 11, 1999. After considering the record, the trial court first found appellant to be a sexually oriented offender under R.C. Chapter 2950. The court then ordered appellant to serve one year for his conviction of gross sexual imposition, which was to be served concurrently with a three-year prison term for his conviction of abduction.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:
 "[1.] The trial court's failure to sentence appellant to a minimum term and failure to sufficiently set forth its reasons for deviating from the minimum term was contrary to the requirements of Ohio Revised Code Section 2929.14(B), and Ohio Revised Code 2929.19(B)(2)(a)[.]
 "[2.] The trial court's admission of evidence seized immediately after appellant's arrest for a minor misdemeanor was contrary to the requirements of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution because the seizure of such evidence was unlawful under Ohio Revised Code Section 2935.26[.]
 "[3.] The trial court abused its discretion and thereby committed reversible error by refusing to permit appellant's counsel to cross-examine Jenny Forsythe concerning material differences between her written statement to the Mentor police and her testimony at trial[.]
 "[4.] The trial court erred in failing to instruct the jury on the lesser included offense of unlawful restraint[.]
 "[5.] The trial court committed plain error by failing to properly instruct the jury as to the lesser included offense of sexual imposition[.]
 "[6.] The trial court erred by denying appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure because appellant's conviction was not based upon sufficient evidence. In the alternative appellant's conviction was against the manifest weight of the evidence[.]"
 In his first assignment of error, appellant argues that R.C. 2929.14(B) requires that a trial court sentence an offender to the minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term would demean the seriousness of the conduct or would not adequately protect the public from future crime by the offender. As part of its obligation under R.C. 2929.14(B), appellant believes that the trial court must indicate during the sentencing hearing that it considered imposing the minimum sentence before deviating therefrom.
Appellant is correct that R.C. 2929.14(B) requires the sentencing court to impose the minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term would demean the seriousness of the conduct or would not adequately protect the public from future crime by the offender. State v. Bradford (June 1, 2001), Lake App. No. 2000-L-103, unreported, 2001 Ohio App. LEXIS 2487, at 6. However, in interpreting this requirement, the Supreme Court of Ohio has held:
 "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) State v. Edmonson (1999), 86 Ohio St.3d 324, syllabus.
 According to Edmonson, a trial court is not required to give its reasons underlying its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crime before the court can lawfully impose more than the minimum authorized sentence. Bradford
at 7. Rather, when sentencing a person to first-time imprisonment, the trial court merely has to state somewhere on the record that one or both of the reasons set forth in R.C. 2929.14(B) justify a sentence which is longer than the minimum. Bradford
at 7-8. In other words, the trial court "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Edmonson at 326.
Appellant argues that under Edmonson, the trial court must make the required findings on the record during the sentencing hearing. To support this conclusion, appellant relies on dicta in the opinion which states: "the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Edmonson at 326.
This court has held on numerous occasions that the findings mandated by R.C. 2929.14(B) "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." Statev. Rone (Dec. 4, 1998), Ashtabula App. No. 98-A-0001, unreported, 1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins (Mar. 16, 2001), Ashtabula App. No. 2000-A-0037, unreported, 2001 Ohio App. LEXIS 1232.
Our holding is in agreement with the decision in Edmonson; although the Supreme Court used the phrase "record of the sentencing hearing" when describing the trial court's obligation, the Court ultimately looked at both the sentencing judgment entry and the transcript of the sentencing hearing before determining that the trial court had not complied with R.C. 2929.14(B). Edmonson at 327-328. Accordingly, under Edmonson, so long as the trial court makes the required finding on the record, it does not matter whether it is made in the sentencing entry or during the sentencing hearing itself.
Nowhere in Edmonson does the Supreme Court suggest that that the trial court must actually state that it considered imposing the minimum sentence. The trial court merely has to state somewhere on the record that one or both of the reasons set forth in R.C. 2929.14(B) justify a sentence which is longer than the minimum.
After looking at the record before us, we conclude that the trial court fully complied with R.C. 2929.14(B) when it deviated from the minimum sentences. The trial court's judgment entry contains the following finding: "The Court finds pursuant to R.C. 2929.14(B) that the shortest prison term will demean the seriousness of [appellant's] conduct." This finding fully comports with R.C. 2929.14(B), Edmonson, and this court's application thereof. State v. Dwyer (Aug 10, 2001), Lake App. No. 2000-L-090, unreported, 2001 Ohio App. LEXIS 3537, at 4.
Moreover, during the sentencing hearing, the trial court expressly stated on the record that "[t]he Court finds that the minimal [sic] sentence demeans the seriousness of the offense." While it is true that the trial court did not preface its finding by stating that it was being made pursuant to R.C. 2929.14(B), it is clear that the court initially considered imposing the minimum sentences on appellant before departing from the statutorily mandated minimum terms pursuant to one of the reasons contained in the statute. As a result, appellant's first assignment of error is not well-taken.
In assignment of error two, appellant argues that the trial court erred when it denied his motion to suppress. Specifically, appellant claims that his arrest for disorderly conduct, a minor misdemeanor, violated R.C. 2935.26 because at the time of the arrest, he did not need any medical assistance, and there was no evidence that he was unable to provide for his own safety.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366.
On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
In the case at bar, appellant was arrested for disorderly conduct based on public intoxication, in violation of R.C. 2917.11(B)(2). R.C. 2935.26, which governs arrests for minor misdemeanors in Ohio, provides in relevant part:
 "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:
 "(1) The offender requires medical care or is unable to provide for his own safety.
"***"
 Pursuant to R.C. 2935.26, a police officer may not arrest a person for a minor misdemeanor, and instead should issue a citation, unless one of the enumerated exceptions is applicable. In fact, the Supreme Court of Ohio has recently held that "[a]bsent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule." State v. Jones (2000), 88 Ohio St.3d 430, syllabus. See, also, Eastlake v. Taylor (Dec. 29, 2000), Lake App. No. 99-L-161, unreported, 2000 Ohio App. LEXIS 6211, at 7. Moreover, the state has the burden of proving that one of the exceptions in R.C. 2935.26 was applicable at the time the arrest was made. State v. Satterwhite
(1997), 123 Ohio App.3d 322, 324.
The trial court conducted a hearing on appellant's motion to suppress on September 3, 1999. During the hearing, Officer Baker testified that when he first approached appellant, he was leaning against the Big Lots building trying to light a cigarette. The officer also testified that appellant's clothing appeared to be disheveled and that when he asked appellant whether he was okay, he did not immediately respond. Furthermore, when Officer Baker asked to see some identification, appellant had trouble retrieving it.
During their conversation, Officer Baker also noticed an odor of alcohol coming from appellant. In addition, appellant's speech was slurred, and he mumbled when he spoke. Based on his observations, Officer Baker determined that appellant was intoxicated, and that he could not safely take care of himself. Specifically, he testified to the following during the suppression hearing:
 "Q. And for what, what was [appellant] placed under arrest for at that time?
 "A. I advised he was under arrest for public intox.
 "Q. And for what reason did you place him under arrest at that point?
 "A. For public intox, he wasn't able to safely care for himself.
"***
 "Q. How did you feel, Officer, his state of intoxication would affect his ability to drive a car?
"A. He would have been impaired."
 Appellant also testified at the suppression hearing, during which time he disputed much of Officer Baker's testimony. He stated that, although he had been drinking during the day, when Officer Baker approached him, he was not so intoxicated that he was unable to understand what Officer Baker was saying to him. Appellant also testified that, in response to the questioning, he told Officer Baker that he was fine, and that he was at the store to shop. However, when the prosecutor asked him whether the alcohol he had consumed had affected him, appellant responded that he was not sure.
From this testimony, the trial court denied appellant's motion to suppress. Appellant, however, now argues that there was no evidence introduced during the hearing showing that he either needed medical assistance or could not provide for his own safety. He maintains that his overall conduct during the questioning established that he was coherent, compliant, and lucid. As a result, appellant contends that he would have been able to contact a family member for a ride off of the premises.
After reviewing the record before us, we conclude that the trial court's decision is supported by competent, credible evidence. Obviously, the determination of whether or not appellant was able to provide for his own safety turns on the credibility of the witnesses who testified at the suppression hearing. The trial court, as the trier of fact, weighed the testimony of each witness and determined that the state's witnesses were more credible than appellant concerning the level of his intoxication. See, generally, State v. Lowe (June 19, 1998), Montgomery App. No. C.A. 16854, unreported, 1998 WL 320992. Accordingly, appellant's second assignment of error is without merit.
Under assignment of error three, appellant asserts that the trial court abused its discretion when it prevented his attorney from cross-examining Forsythe with respect to alleged inconsistencies between her trial testimony and her written statement to the police. In particular, he argues that his attorney was unable to question the victim about why she never mentioned in her written statement that appellant had pinned her against her car. Appellant feels that he should have been allowed to cross-examine Forsythe on this omission because it went to her overall credibility.[1]
On direct examination, Forsythe testified about how appellant approached her from behind, grabbed her right buttock, and made a crude comment. When the prosecutor asked her to provide more detail about the incident, Forsythe explained how appellant had used his body to pin her against her vehicle.
During cross-examination, the following exchange occurred when appellant's attorney attempted to impeach Forsythe's credibility by asking her why she had not included the fact that appellant had pinned her against her car with his body in the statement given to police:
 "Q. And then while you were in the safety of the police car you were asked to write a statement about what had happened; is that correct?
"A. Right.
 "Q. And you did, in fact, write that statement; did you not?
"A. Yes, I did.
 "Q. And in that statement you never said anything about the defendant having his body pinning you against the car, did you?
"A. No, I didn't.
 "Q. That was the most traumatic thing that had happened to you that day; was it not, Ms. Forsythe?
"A. That's right.
 "Q. And while you are in the police car with a chance to write it down you did not write it down, right?
"A. Right.
"Q. But you're telling it to us today; are you not?
"A. Correct.
 Q. "All you told the police was that he grabbed my rear end, right?
"A. Right."
 After the last answer, the prosecutor objected, and she and appellant's attorney approached the bench for a sidebar conference. During the conference, appellant's attorney expressed the opinion that Forsythe's written statement contained a material omission because it did not mention appellant using his body to trap her against her vehicle. The trial court looked at the statement, sustained the prosecutor's objection, and ruled that appellant's attorney would not be allowed to cross-examine Forsythe on the alleged omission because it was not inconsistent with her testimony.
Crim.R. 16(B)(1)(g) provides the following:
 "In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."
 In construing the above provision, this court has previously held that "not every omission during testimony of details contained in a witness' statement to police constitutes an inconsistency within the meaning of Crim.R. 16(B)(1)(g)." State v. Armington
(Dec. 30, 1988), Lake App. No. 12-015, unreported, 1988 Ohio App. LEXIS 5277, at 13. Instead, "[c]ertain details related to the police may naturally not be brought up on direct examination and some details omitted from a witness statement may naturally crop up for the first time at trial ***." State v. Hartford
(1984), 21 Ohio App.3d 29, 31. As a result, "it is not appropriate to consider the omission of such details to be `inconsistencies.'" Id.
Nevertheless, under certain circumstances, more material omissions may be fairly construed as inconsistencies under Crim.R. 16(B)(1)(g). Id. See, also, State v. Davie (Dec. 27, 1995), Trumbull App. No. 92-T-4693, unreported, 1995 WL 870019, at 30. However, the trial court is given broad discretion in determining whether a specific omission is inconsistent with a witness' trial testimony. Davie at 30; State v.Morris (Dec. 30, 1994), Lake App. No. 93-L-157, unreported, 1994 Ohio App. LEXIS 5981, at 23.
Here, the factual situation is different from that contemplated by Crim.R. 16. The record is very clear that defense counsel had the statement in question prior to the prosecutor's objection. As a result, even though the trial court ruled that there were no inconsistencies between Forsythe's statement and testimony, defense counsel was not prejudiced because he was not seeking the statement. Instead appellant now claims he was denied the right to pursue this line of questioning. That is simply not true.
Regardless of whether the alleged omission was material enough to be considered an inconsistency, the transcript clearly shows that appellant's attorney was in fact able to cross-examine Forsythe about her statement. As a matter of fact, appellant's attorney asked Forsythe at least five different questions with regard to why she never mentioned in her statement that appellant had pressed his body up against hers. Furthermore, during cross-examination, Forsythe admitted that she did not say anything in her statement about appellant pinning her against the car.
Appellant provides no explanation concerning what more could have been gained from continued questioning on this subject. Indeed, the record shows that once the prosecutor objected and before the sidebar conference was held, appellant's attorney had already asked Forsythe another, unrelated question.
Moreover, as previously indicated, the record is clear that appellant's attorney had a copy of Forsythe's statement prior to and during the trial. Thus, this was not a situation where a defendant was caught off-guard or was unaware of a previous statement made by a material witness.
In addition, the prosecution filed a bill of particulars before the trial started in which it is clearly stated that appellant pushed Forsythe against her vehicle while pressing his body against hers. Accordingly, appellant was well aware of the prosecution's position with respect to the abduction charge. As a result, the trial court did not abuse its discretion in denying appellant's attorney further opportunity to cross-examine Forsythe about the alleged omission. Appellant's third assignment of error is not well-taken.
In assignment of error four, appellant maintains that the trial court erred in failing to instruct the jury on unlawful restraint as a lesser included offense of abduction. He believes that the jury should have been instructed on the lesser included offense because, according to appellant, there was no evidence that he used force or that he threatened the victim in any way. Appellant further argues that there was a material issue of fact as to whether Forsythe was actually placed in fear, and that because of this, the jury should have been given the choice between the two charges.
Likewise, appellant claims in his fifth assignment of error that the trial court abused its discretion by failing to instruct the jury on sexual imposition as a lesser included offense of gross sexual imposition. Appellant contends that there was absolutely no evidence introduced during his trial showing that he acted knowingly. According to appellant, his possibly pushing the car door against Forsythe when trying to get through the parking lot was, at most, reckless conduct.
When a criminal defendant requests that a lesser included offense instruction be given, the trial court must make two determinations. First, the court must decide what constitutes a lesser included offense of the charged crime. Second, the trial court must consider the facts of a given case and ascertain whether the jury could reasonably conclude that the presented evidence would support a conviction for the lesser offense, but not the greater. State v. Kutnar (Sept. 30, 1999), Lake App. No. 98-L-117, unreported, 1999 Ohio App. LEXIS 4652, at 8-9, citingState v. Kidder (1987), 32 Ohio St.3d 279, 280.
There is no question that unlawful restraint is a lesser included offense of abduction. Kutnar at 13; State v. Bleasdale (Sept. 6, 1996), Ashtabula App. No. 95-A-0047, unreported, 1996 Ohio App. LEXIS 3876, at 11. Nonetheless, as we noted above, even when a particular offense is a subsumed by another, a trial court is not automatically required to give the requested instruction.
Rather, a criminal defendant is entitled to such an instruction only if warranted by the evidence. Stated differently, a lesser included offense instruction will be given where the trier of fact could reasonably find for the accused on one or more elements of the crime charged, and against the accused on the remaining elements, which form the lesser included offense. Kutnar at 10. Thus, a trial court should give an instruction on a lesser concluded offense only when the evidence presented is such that a jury could both reasonably acquit the defendant of the charged offense and convict him of the lesser included offense. Id. at 11.
Here, despite denying he ever physically touched Forsythe, although there may be a question as to whether the car door did, appellant argues there was no evidence that she was put in fear by his conduct, which is a required element of abduction. To support his argument, appellant refers to the portion of Forsythe's testimony in which she explained how she followed appellant out of the parking lot so that she could acquire his license plate number. Based on this testimony, appellant maintains that the jury could have reasonably acquitted him of abduction, while at the same time find him guilty of unlawful restraint. We agree.
To convict appellant of abduction, the state had to prove that he knowingly, by force or threat of force, restrained Forsythe's liberty under circumstances that placed her in fear. R.C. 2905.02(A)(2). On the other hand, to convict appellant of unlawful restraint, the state would have been required to prove that appellant, without privilege to do so, knowingly restrained Forsythe's liberty. R.C. 2905.03(A). Thus, if Forsythe was never put in fear by appellant's actions, he would not be guilty of abduction, but instead, would be guilty of unlawful restraint.
Under the facts of this case, we conclude that the jury should have been instructed on the lesser included offense because a question was raised with respect to whether or not Forsythe was put in fear, and as to the use of force. Forsythe's own testimony shows that after the alleged incident occurred, two men approached the scene and asked if everything was okay. Instead of asking for their help, Forsythe, with her young daughter, got into her own vehicle and began to follow appellant around the parking lot in an effort to obtain his license plate number. From Forsythe's actions, one could reasonably determine that she was not placed in fear by appellant's alleged conduct. Accordingly, the jury should have been instructed on unlawful restraint because there was a question as to that particular element of abduction. In other words, the evidence presented is such that a jury could both reasonably acquit appellant of abduction, while at the same time convict him of the unlawful restraint. Kutnar, supra. Appellant's fourth assignment of error has merit.
Next, we must decide whether the trial court should have instructed the jury on sexual imposition as a lesser included offense of gross sexual imposition.[2] This court has previously held that sexual imposition is a lesser included offense of gross sexual imposition. State v. Martin
(Dec. 2, 1994), Ashtabula App. No. 93-A-1830, unreported, 1994 Ohio App. LEXIS 5409, at 8. However, the trial court was required to give the requested instruction only if the jury could have reasonably acquitted appellant of the charged offense and convicted him of the lesser offense.
Appellant argues that the jury should have been instructed on sexual imposition because there was sufficient evidence to support a guilty verdict on the offense. Whether or not this is true, appellant's present position is somewhat contradictory to the actual state of the evidence because at trial he claimed that he never touched the victim. Nevertheless, appellant now maintains in his brief that "once Forsythe verbally objected to any such contact, he did not attempt to touch her again." Therefore, according to appellant, "[i]f the jury had found [a]ppellant's testimony to be credible, it could have concluded that [he] was not guilty of Gross Sexual Imposition because he did not use force." In turn, appellant believes that the jury could have then found him guilty of sexual imposition "because the evidence supported a conclusion that the victim found the contact offensive, and [a]ppellant was reckless in this regard."
Even if appellant's inferences were accurate, at no time during the trial did he even remotely suggest, as he does now, that he never again attempted to touch Forsythe after she objected the first time. Quite to the contrary, the only thing appellant conceded during his testimony was that he might have pushed the car door against the victim while working his way through the parking lot.
As noted earlier, Forsythe testified that appellant approached her from behind, pressed his body into hers, and then grabbed her buttocks. According to appellant, even if you take this testimony as true, there was no evidence that he compelled Forsythe by force or threat of force to submit to the sexual contact. This is simply absurd.
Force is defined as "any violence, compulsion, or constraint physically exerted by an means upon or against a person or thing." R.C. 2901.01(A)(1). Assuming that the jury found Forsythe's testimony to be credible, which it obviously did, the state clearly introduced evidence that appellant used force. More importantly, there was absolutely no evidence presented by either side tending to show that appellant was reckless in his actions. In fact, when appellant testified that he tried to squeeze between Forsythe's door and the adjacent car, he denied ever touching the victim in any manner, whether intentionally or unintentionally.
Again, appellant's defense at trial was that he never touched Forsythe. This is an absolute defense which, if believed, would have precluded a conviction on the lesser charge of sexual imposition.
Furthermore, if appellant's version of the events were true, it would obviously preclude an instruction on sexual imposition. That is, if appellant never touched Forsythe, but the car door did, he could not be guilty of sexual imposition because there would be no touching for the purpose of sexually arousing or gratifying either person.
As a result, when looking at the evidence which was introduced during the trial, it is obvious that no reasonable jury could have acquitted appellant of gross sexual imposition while at the same time convicting him of sexual imposition. In other words, there was no evidence to warrant a jury instruction on the lesser included offense of sexual imposition. Appellant's fifth assignment of error is not well-taken.
In his sixth assignment of error, appellant argues that the trial court erred when it denied his Crim.R. 29 motions for acquittal because there was insufficient evidence with respect to whether he used force in the commission of the crimes. As an alternative argument, appellant claims that the jury's verdicts were against the manifest weight of the evidence because the trial court failed to instruct the jury on lesser included offenses. He believes that the jury was unfairly put in an "all or nothing" position, which ultimately caused the jury to lose its way.
Under Crim.R. 29, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. Accordingly, a motion for judgment of acquittal under Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987),33 Ohio St.3d 19, 23. Thus, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence.
When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
"[T]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
To convict appellant of abduction, the state was required to prove that he knowingly, by force or threat of force, restrained the victim's liberty under circumstances that placed her in fear. R.C. 2905.02(A)(2). To convict appellant of gross sexual imposition, the state was required to show that he purposely compelled Forsythe, by force or threat of force, to submit to sexual contact. R.C. 2907.05(A)(1).
As we have already noted several times throughout this opinion, Forsythe's testimony, if believed, provided sufficient evidence that appellant used force.[3] According to this testimony, appellant forcefully pushed Forsythe up against her car with his body while grabbing her buttocks.
Therefore, based on our review of the record, and when looking at the evidence in a light most favorable to the prosecution, this court concludes that the prosecution offered sufficient evidence, beyond a reasonable doubt, to support each of the essential elements of abduction and gross sexual imposition. Much of the testimony presented rested on the credibility of the respective witnesses. However, the credibility of the witnesses, both that of the prosecution and appellant, were critical issues for the jury to decide, and this court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility. State v. Namey (Oct. 6, 2000), Ashtabula App. No. 99-A-0003, unreported, 2000 WL 1487638, at 6.
As for whether his convictions were against the manifest weight of the evidence, appellant simply contends that the court should have instructed the jury on the requested lesser included offenses. In doing so, appellant essentially restates those arguments raised in his fourth and fifth assignments of error. That is, appellant maintains that because the trial court failed to provide a jury instruction on unlawful restraint and sexual imposition, the jury lost its way in convicting him of the charged crimes.
Given the fact that we have already concluded that appellant was entitled to an instruction on unlawful restraint, those portions of this assignment of error arguing such are moot. However, with respect to his conviction for gross sexual imposition, we have already found his earlier arguments to be without merit; thus, there is no need to restate our analysis here. Suffice it to say, appellant's defense at trial that he never touched the victim was the source of the all or nothing dilemma. After reviewing the entire record and weighing the evidence presented by the state, including all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction for gross sexual imposition. Accordingly, appellant's sixth assignment of error has no merit.
Based on the foregoing analysis, appellant's fourth assignment of error has merit, while the remaining assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
JUDGE ROBERT A. NADER
O'NEILL, P.J., concurs in part, dissents in part with a Concurring/Dissenting Opinion, CHRISTLEY, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.
[1] The only issue raised by appellant on appeal is his right to cross-examine Forsythe about her statement, a copy of which he had in his possession at trial.
[2] Appellant states that this court should apply a plain error analysis to this assigned error because his trial attorney never requested an instruction on sexual imposition. A review of the record shows that this is incorrect. Before the trial court gave the jury its instructions, appellant's attorney orally moved the court to give an instruction on sexual imposition. However, the trial court denied the request. Accordingly, we will review the trial court's denial for an abuse of discretion.
[3] Because appellant only challenges his convictions on the grounds that the prosecution did not provide sufficient evidence of force, we will limit our analysis to this element.